All right, the next case before the court is Stevenson v. Game Show Network, LLC Case No. 151359. That is a case on appeal from the Patent Trial and Appeal Board. Mr. McDonald, you want to reserve four minutes for rebuttal? Yes, thank you. And I won't favor you solely because that was my main thing, but... Ma'am, may it please the court, good morning. The dispositive issue here is whether these claims of the Stevenson patent are all directed to a tournament involving two rounds of play, with the claim specifically calling out playing a game of skill. I thought the dispositive issue was whether, under any turn of events, it could be a cooperative relationship between the player and the computer, or whether it had to always be a competitive relationship. Do I misunderstand the case, which is very likely? Well, Your Honor, I think that's a partial understanding. The board didn't so much put it in those terms as putting it in terms of including at least administer with play. Game Show Network, GSN here, has kind of reformulated it and talked a lot about that issue, but I'm certainly prepared to talk about it in terms of cooperative versus competitive gaming. I thought that was the heart of the issue. I think that's important. Judge Plager's question is important. Are you saying there's some other issue that we should be focusing on? Well, the board's actual construction doesn't talk about cooperative versus competitive. They use that phrase, where the playing is at least administering. We are saying, at least that's part of the issue here, that that is wrong. That's something, in addition to playing, it's over-broad. That certainly brings in this cooperative issue into it. That's the construction of between. Well, of the whole phrase, Your Honor, the playing game of skill, which includes that at least administering. Doesn't it turn on whether that whole phrase sets up a possible cooperative relationship? Well, I guess I'll look at it in terms of Walker, which is the prior art that there's an anticipation. That's the only issue here, as to most of the claims. There's a couple dependent on obviousness, but the core issue is whether Walker actually anticipates that limitation. That finding of anticipation was based on Walker having the computer ask the questions to the human player. So if you really want to get down to it, I would say that's really the issue, is whether this playing a game of skill between the single player and the computer in these two rounds, does that specifically include just the computer asking questions to the human player? If I really want to get it down to what it is, that's what it is. Because if it's yes, then Walker anticipates, and if it's no, Walker doesn't, and it should be reversed. All right, go ahead. Page 36 in the heading, you say the parties agree that playing between, quote, playing between closed court and, quote, playing against closed court, are used interchangeably in the specification. And it seems to me that that is in direct conflict with the PTEP's decision, where they expressly declined to treat the two as synonymous. At JA-9, claim one recites between, not against. And they say Mr. Stevens has not shown that he defined the term between in the specification with reasonable clarity, deliberateness, and precision to mean against. So how is it that the parties both agree to that? Well, the parties did, but the board didn't. That's what happened there. The experts did agree on that. Now, they would say, well, their expert agreed more that playing against is like between, and we argued that between includes against. But the board basically kind of disregarded both experts saying that they thought those terms were interchangeable. That's what happened there, Your Honor, I think. If the board's claim construction of between is correct, do you concede the anticipation? Yes. So one of the ones that sort of jumped out at me, I know you had your debate about whether solitaire could be only a solitaire version with two people, even though that's not what it says. But how do you play trivia against a computer? You can't possibly win. Well, it would be like a Jeopardy sort of game. And you can control the level that the computer plays at. That's very common in various computer games where you can play against the computer. The computer could cream you, I suppose, if you had the highest speed computer. Well, how are you testing your own? You can adjust the timing of how quickly it speeds. How do you test your own level if you dumb down the computer? Well, you dumb down the computer to the same level for every human player. The computer answers questions within a certain amount of time. Maybe it gets a certain percentage wrong. In the same way when it's playing each individual person. That's how you get that reliable gauge. And where does it say in the specification that that's how that happens? Well, I would say, Your Honor, the key places for that would be found at the end of the background of the invention at the bottom of column one, where it talks about the prior art and what it doesn't have. And this is the last paragraph then going into what the invention is. So it's really teeing up what the invention is. The prior art does not allow a player to gauge his level of performance by allowing the player to test his skill and ability against the tournament sponsor, which is the host computer, and other players during the same tournament. So there you have test against both. And that's the key thing that goes on to talk about that reliable index in the next sentence there, as it tees up the description of the invention when you go to that next section. And moreover, you have the fact that we have only one figure in the patent, figure one, that sets forth the process for all games including trivia. And it starts off with the player plays game of skill versus host computer. Versus. That's again, so that's made clear when column three talks about that exact same square at line 26. And that's referring to that same paragraph there in column three beginning at 26. When it talks about games of skill, listen, at least example ones, and it says it includes the trivia games, it includes guard games, it even includes solitaire. All of those games involve the player playing versus or against the host computer. So that's pretty unequivocal here in terms of the specification. It talks about play against about 12 times, I believe, throughout the patent here. The only part of the spec that GSN and the board really try to say goes to the contrary, is column two beginning at about line 15 or 17. Where we have that paragraph where it talks about the qualifying round is played between a single player through a computer terminal and a host computer. The host computer has the ability to act as a game sponsor by keeping score, operating the game, monitoring the player's progress, and distributing awards. So they're saying that means sponsoring is within play. I think it's very clear from the spec that, as well as the claims themselves, that those sponsoring activities are a separate thing or a separate bucket from play. You look at claim one, it's got two playing steps to it. And it's also got three evaluating steps and then distributing award steps. All of those other steps that aren't playing are the ones that column two there list as sponsorship sort of activities. Those are the keeping score, monitoring progress, and distributing awards. So we're clearly putting those in two different buckets. Playing is one thing. Those acts of sponsorship are different. And then we have one other one in here in that list of acts of sponsorship operating the game. I would say that's exactly what you would say the computer is doing when it poses the questions to the human player. So what you're saying is that the claim really should have used the word against. And that's something that you tried in your re-exam to amend to say against. Did you file a motion to amend in this proceeding? We did not file a motion to amend in this proceeding, Your Honor. At the time we had that opportunity, the Board had never granted one. And the Board specifically said in their order giving us leave that we did have the option of bringing either a re-exam or a re-issue. And that's what we do have pending as a re-issue at this point. So you're saying because the Board had never granted a motion to amend in other IPRs you didn't ask in this one? Well, we think it was a reasonable decision that the Board actually embraced as one of the options that you have. They told us you could seek amendment here, but you can also seek amendment through those other means. So there was no weighting of one over the other here necessarily. Go ahead, sir. You said in the request for the re-examination that the proposed amendment represents a significant change from the original claims of the 237 PAD. Well, that was in the context, Your Honor, where immediately adjacent to that as we pointed out in our brief, we were saying if you assume the construction of the claim in the plain between language specifically, as the Board has stated, which we disagree with. So that's what happened there. By the way, the re-examination was rejected, was dismissed, but then we did file a re-issue. And that's what's currently pending. This patent, it was filed in 1999, so it doesn't have that many years left. So we do think it's important that the original claims be construed appropriately so we don't lose any opportunity to get past damages. Mr. McDonald, this case illustrates, in your argument, illustrates the basic nature of many of our claim construction cases. You cherry-picked all the material in the specification, in the written description, that supports your viewpoint. My guess is that Mr. Babcock is going to come up here and cherry-pick all the provisions in the written description that go the other way. And when we get all done, we're still left with total ambiguity as to what is the right answer and whether that right answer should have fallen to your applicant and your patentee to have made clear in his application and in the patent process as to exactly what he's talking about. Judge O'Malley highlights the exact problem. Did you mean between or did you mean against? And the answer to that is you say against, he's going to say between, and between means this. And what are we supposed to do with that other than perhaps to say to you patentees, you guys got to make these things clearer or you stand a substantial chance of losing as you did before the PTAP. I would say to that, Your Honor, the board's construction or playing is including administer. There is nothing in the specification here or any of the prosecution history that really supports that idea. I don't think the patent applicant here can be faulted for that. You'll listen to Mr. Babcock when he gets up. Well, we'll see how much he defends administer. Before he does, let me point you to something, the key portion, I think, that the PTAP relied on, and that's column two at lines 15 through 21. It says the host computer has the ability to act as game sponsor by keeping score, operating the game, monitoring the player's progress, and to distribute awards when appropriate. Also, the host computer has the ability to act as another player if the game requires more than a single player. So if that's the case, how do you continue to assert that all of these games have to have more than one player? Well, the immediate before line talks about the qualifying round played between a single player through a terminal and a host computer. So it sets up a single player. It talks about the sponsoring activities separately. In that third category, as they mentioned, our expert explained that that would be things like bridge, which is specifically called out in the spec and claim ten where you have multiple players and I have to have a partner. You can read those as three different things. If the game requires more than a single player. So if you've got a single player, how are you playing against the computer? Well, with single player in that context, Your Honor, I would submit that that's a single player playing by themselves versus do they have a partner. That's what our expert showed would be the distinction there. But clearly, you have to have competition here for these claims. It's a tournament with a qualifying round, a playoff round where you have a winner determined. Is there anything in the specification that describes a process by which the computer, through some algorithm or otherwise, is set at a particular level of human play? It doesn't go into detail on that. But you clearly have games like bridge and gin rumby and things like that, Your Honor, where you're playing between the player and the computer at that point. You've got to have the computer engaging and play clearly in games like that. There's no doubt about it. It's the same thing that's being described throughout. This figure one applies to all those games, whether it's bridge and gin rummy or these other games. It talks about all of those games as being against the computer. Every one of those games can be played against the computer. And solitaire? Absolutely, Your Honor. Also, that's a multiplayer game. Both sides and the board acknowledge that. I've played solitaire all by myself, so have you. But that's not enough to undermine the meaning of Claim 1 here. The North American vaccine case is a good example of that, where the independent claim included, I'll call it A, and the Federal Circuit limited it to A. The parties said, well, wait a minute, a dependent claim actually would be limited to B. So you have to include B here, too. And the Federal Circuit said no for two reasons. One, the dependent claim tail does not wag the independent claim dog. And two, particularly relevant here, they said, moreover, that dependent claim, there was evidence that said, well, that claim could include B, but it could also include A. There are barriers. In that case, it was molecules. But as long as that dependent claim could include version A, that was consistent. It wouldn't give us a reason to not limit the independent claim to that version A. Very analogous to what we have here. Please don't ask me what an analogy is after that last argument. But you have both kinds of solitaire. You can reconcile that. That's what the North American vaccine said. As long as I can reconcile that there are some variants of solitaire that are consistent with playing against Claim 1, I don't broaden out Claim 1 just to grab those other variants of solitaire. Okay. You've used up your rebuttal time, but we'll give you two minutes. Thank you. Good morning, Your Honors, and may it please the Court. Mr. Babcock, are you both in agreement that playing between and playing against are used interchangeably in this specific case? We're not, Your Honor. I didn't think so. No, we're not. That whole argument is based upon a gotcha, where in a deposition of our expert, they asked that question at the end, and he said, yeah. And they go, ah, ah, ah, ah, now everything he said prior to that. Wait, wait, wait. How is that a gotcha? They ask him a question under oath, and he says, yes. Because they didn't say. I mean, isn't that how it's supposed to work? His entire testimony. No, no, no. I'm saying it's out of context. A gotcha means it's a statement that doesn't have context and didn't allow him to explain his answer. His entire testimony in his deposition throughout his declaration was that the claims require cooperative play or competitive play. They allow for both. And his testimony is that even against can mean cooperative. If you say I'm playing against the house or I'm running against the clock, that's still not necessarily, you're not competing with the clock, you're not competing with the house. So his view is even against could be cooperative. It doesn't have to be competitive head to head. And so they never asked him to explain that. Playing against the house. The house isn't a computer. I mean, I don't really understand that. A house is playing with the same cards. Correct. I mean, they may be cheating, but that's, you know. So his view, the testimony throughout this case was that the claims are broad enough to encompass cooperative game play. And the fact that at the end of a deposition, they say it's interchangeable. Yeah, you could, against could be used as cooperative as well. And that was the extent of that gotcha, something that escalates into, oh, my gosh, Game Show Network has conceded that this claim is limited. That's not the facts here. Let's look at the background of the event at the bottom of column one. It says the prior games of skill or tournaments have not been successful. These references do not allow a player to gauge his level of performance by allowing the player to test his skill and ability against the tournament sponsor. And then the next paragraph talks about the need for a tournament which allows a player to compete and obtain a reliable index as to his skill as compared to other competitors competing under the same game conditions. I mean, that's sort of just defining exactly what your friend on the other side says this invention is supposed to be. Well, no question preferred embodiment is a head-to-head competition. But I think Judge Plager's query was the right query, except I want to refocus it a little bit because if this were an appeal from the district court where you're looking at a Phillips construction, maybe this notion of ambiguity is a little harder to resolve. Here you're not dealing with a Phillips construction. You're dealing with the broadest reasonable interpretation in view of the spec from the board. And that's still the state of the law as we know here. And so the question isn't, well, if it could be one or the other, which one should we choose? It could be both. And the passage that you pointed to, Judge O'Malley, isn't just some obscure. We point to Column 2 and the lines that you pointed to earlier, which is lines around 8, starting at line 14, 15, 16. That isn't some obscure passage that we picked and cherry-picked out of the specification. This is at the beginning of the description of the invention. And this is the only place where it describes the role of the player and the computer. So it's not some place that we found on Column 64 buried somewhere or some strange embodiment. This is the key discussion. Would your position survive if we applied Phillips construction? It would, Your Honor. It still would. But you don't have to do that. You suggested that it was maybe a difficult issue to try to decide if it's ambiguous. And I'm saying here, if it's ambiguous, we get the benefit. We get the benefit because it's broadest reasonable. And the board here said, look, it's got to at least include what's disclosed reasonably. And under broadest reasonable, this... I interrupted you. Finish your point from before. So the point is, this passage that we point to is the defining passage about the role of the player and the computer. And it says very clearly, we're talking about the qualifying round. And it says very clearly, the qualifying round is played between the word that the patentee chose. The patentee does use the word against. It does use the word versus in the spec. But the patentee claimed between. So here's the word. The qualifying round is played between a single player through a computer terminal and a host computer. Now it describes further how that action takes place. The host computer has the ability to act as a game sponsor, keeping score, operating the game, monitoring the player's progress. So that's clearly not being a competitive head-to-head player. Right, but that household still has to occur regardless of whether you're playing against the computer or simply using the computer, right? I mean, even in the against scenario, you need to have somebody monitoring how you're doing and keeping score. True, but I wasn't quite finished with the passage because the next sentence says also, the host computer has the ability to act as another player if the game requires more than a single player. Right, but can't you go back and say that that phrase to a single player relates back to the reference to a single player earlier in that same paragraph? In other words, the single player is the person that's interacting with the computer. In that reference, the second reference to single player, it means if you need more than the one human being. You're reading words into what this says. It says if the game requires more than a single player. If you further read through the specification and the claims, we have examples of games. The patent owner here says that we cherry picked trivia. We picked one game out of 40. If you look at that same place just above where we're looking at column two, they define six types of games. Not 50, six. Chess, poker, bridge, hearts, blackjack, and question and answer trivia games. That last one is at least typically considered a single player game. The computer asks the question. The user answers the question. We have on the next column, in column three, we have listed trivia again. We have solitaire. We have crosswords. With solitaire, you've got the problem that those things are listed in independent claim 10. That's not a problem for us. Shouldn't we interpret that claim consistent with the reference to a game of skill identified in independent claim one? Sure. Solitaire is a game of skill. It's not a game of chance. Why is not his point valid that it's a dependent claim that we don't need to read into the independent claim? The doctrine of claim differentiation is not a requirement that it must happen. Our position isn't that you must construe these claims and allow the dependent claims. The axiom is that when you construe claims, you should look at not only the claim meaning and the specification, but you can look at the other claims as well. Those provide guidance. Those provide input into the claim construction process. If you've got dependent claims, which we have here, which are all traditionally single player games, and we're not just talking about trivia. The dependent claims say solitaire. They say crosswords. They say word search. They say word scramble. They say word match. They have maze games, pinball. Those are all dependent claims, which are dependent upon claim one. So broadest reasonable. Is it reasonable then to construe claim one to allow for single player games? Certainly. Particularly in light of the spec, which says, hey, the computer can act as a sponsor, or it can be a participant. Either way. If you keep going back to broadest reasonable and I keep coming back, wouldn't you lose under Phillips? Would I lose under Phillips? I don't think so, Your Honor. Because I think that the proper construction, even under Phillips, is that both cooperate. Because we're looking at the word between. Between is acknowledged by the parties to mean jointly engaging. They provided that definition. The board adopted it. They also provided the definition of against, which means competitive. Now, if they had claimed competitive, we'd lose. If they had claimed against, yes, under Phillips, we'd lose. But even under Phillips, you're still looking at the construction in light of the ordinary meeting and the specification, intrinsic record, and all of the spec suggests that it could be both. And I think the best part we're looking at is column two, where it says it can be either. It can be a host or it can also be a player if the game requires more than one player. The ordinary understanding of that is if you have a game that requires more than one player, say if Solitaire is one player, Word Search is one player, CrossFit is one player, if you have a game that requires more than one player, then the computer can step up and be a contestant itself. Single player, not one player. Single player. Sorry. It true to the claim. So I think in this case, the answer is fairly straightforward. Broadest reasonable. There's only really one issue here. Can it be competitive or is it required to be competitive or head-to-head? How do you gauge your talent, your performance level, if you are playing Solitaire and all the computer is doing is keeping track of the fact that you're playing Solitaire? Because Solitaire is a game of skill and you can improve. Depending on how good you are and how fast you are at completing the deck, getting all the cards locked up, you can get a score. A beginner player maybe will take more time and maybe never be able to eliminate all the cards. So what the computer there is doing is just evaluating how good you are as an individual, as a single player, playing Solitaire. And that ranks you in this tournament. And if you're really good, you'll finish all the deck quickly and you'll get a good score. And as you improve, I think we've all played Solitaire, you learn how to play, you get better and you can do it more quickly. You can see the combination more quickly and you can play more quickly. So that kind of game, it's very simple. That's how you would be scored. It's like any crossword or any kind of word search. They're skill games and the more you play, the more you learn, the faster you are and the computer can score you on those. And I do want to point out one more final thing. I think besides the intrinsic record, which I think is dispositive here, if you look at the re-exam, which Judge Wallach pointed to, I think that's quite telling because in this scenario, this was a situation where it's hard to tell whether your compatriot's argument about that is correct or not since the record doesn't include the prior page. It may not. It's not. But I think the part that we cited, we should have been more liberal in our joint appendix to provide context. The court's rules are don't throw in stuff that you're not citing to and sometimes when we put those together, we put those fairly literally. We should have done a few extra pages, plus or minus. But if you do look at even that page that's in the record, you'll see that the caveated sentence we didn't cite. The caveated sentence is toward the top of that statement. If you look at the sentence we cited, there is no caveat. They don't say, oh, in light of the current construction. They just say, this new claim which requires head-to-head competition is different than the current claim. I think this is telling because what happened, and I think this is in the record, is that under the board rules, you have to seek authorization to seek a motion to amend. They sought a motion to amend. During that conference call, the judge said, hey, are you going to put head-to-head in the claim? Is that what you're going to do in your amendment? They said, yeah, that's what we're planning to do. The board said, okay, go ahead and do that. That's what the IPR process is for, is you've got little amendments, throw them in now. They chose not to do that. They said, you know what, let's not do a motion to amend, which is an inter-parties process where we can attack that. They said, let's do it ex-party, and therefore we have a fallback. In case this claim goes down, we're going to have another claim that can survive. I think here it's quite telling that they knew how to claim it with head-to-head, and they just chose not to. And they shouldn't get the benefit of that decision in this case.  Thank you, Your Honor. Before you get to your substance, and I won't eat up your time for this, but there's a lot of games in here I'd never heard of, and so I tried to figure out just because I was curious. But what is foosball trivia? My guess is the S should have been a T. The answer is I don't know, Your Honor. I just can't imagine what trivia would exist about a game of foosball. Me either. I was wondering about Bible trivia, but I'm not going to go there. Okay, go ahead. Thank you. I know I don't get the benefit of Phillips because this is about IPR, but I do get the benefit of ProxyCon and Straight Path and these other cases that have been coming up in the IPR context. They all say we begin with the claims. The claims here separately call out the step of plain from administrative steps like evaluating and distributing awards. The very same steps, they're in that sponsor sentence. That is the only sentence you heard. Your Honor said both hear a lot of stuff. They only have that one sentence to try to support their position. That sentence, actually, when you read it in view of Claim 1, which is the starting point, clearly puts sponsorship in a different bucket from plain. Sponsorship is evaluating, it's distributing awards, and it's operating the game, which would be asking questions and trivia. So in the IPR context, we'll follow that real carefully here. Start with the claims and really end with the claims and say that playing a game of skill in a qualifying round between a single player and a host computer is certainly competitive. If you have a game of football in a playoff round between Washington and Dallas, that is competitive. There's no way anybody would say a plain meaning of that would include cooperation between Dallas and Washington in the game. That's the context. They all shook hands at the end. That's nice. After the game. They say that's not a good example. There are examples in Column 3, including sporting events and things like that. Your view is that they would lose under a Phillips interpretation? Absolutely. That's the easier part. When you see Proxicon and Streetpath, they're not saying just ignore Phillips and come up with your own things. They still are adopting canons of claim construction in those decisions for IPRs. Proxicon says that a broadest reasonable interpretation cannot be unreasonable, which it seems to me is a very obvious statement. A broadest reasonable interpretation cannot be unreasonable. But it certainly can be broader than what we think of as a Phillips interpretation, can't it? I think in the abstract, Your Honor, that's right. It's a case-by-case thing. I kind of know it when I see it because I think a lot of cases, they wouldn't be different because you'd hope that you do when you start with the claims and go through those canons of construction. You'd have a relatively clear answer. I think you do have one here when you clearly have claims separately claimed from evaluating and distributing those things that are put in that sponsorship bucket. In the only sentence, column two there about line 20, that they really cited to the court here to support their construction, that Plain would include at least. Ultimately, your argument is that their broadest reasonable interpretation is unreasonable in light of the total written description. In view of the claims and the specifications, right? Okay. I would just point out that Jeopardy is a trivia game. It definitely is competitive, but it's answering questions about trivia. All these games can be, and you heard them explain that. Even Solitaire can have these scores. They're basically admitting whenever you got a score, my score can be higher than your score. And now you can be in a competitive situation. They really have trouble decoupling any of these games from a competitive context here when you have to read them in view of claimants. Thank you. Okay. Thank you.